IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARTEMIS HARRIS, <br><br> Plaintiff, <br><br> v. <br><br> ERNEST SPRADLEY, <br><br> Defendant. | Case No. 18-cv-07993 <br><br> Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Artemis Harris brings this action under 42 U.S.C. § 1983 claiming Defendant Ernest Spradley violated his Fourth Amendment rights. Spradley moves for summary judgment. For the reasons stated below, Defendant Spradley's motion for summary judgment [111] is granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 250 (internal quotations omitted).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (*citing Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

## BACKGROUND[1]

Harris is an African American male who at all relevant times hereto was a resident of the south side of Chicago (DSOF ¶1).[2] Lieutenant Ernest Spradley, who

---

[1] The facts in this Background section are undisputed unless otherwise noted. Defendant's Rule 56.1 Statement of Facts (Dkt. 112) is abbreviated as "DSOF". Plaintiff filed a response to Defendant's statement and his Additional Statements of Facts ("PSOF") (Dkt. 123). Defendant did not respond to Plaintiff's additional facts.

[2] The Court will discuss particular facts and compliance with Local Rule 56.1 as relevant in this opinion. *See Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 648 (7th Cir. 2014); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015) (court has discretion to require parties to comply strictly with local rules and "courts are not required to wade through improper denials and legal argument in search of a genuinely disputed fact.") (citation omitted); *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("the decision whether to apply

is also an African American male, was a Tactical Lieutenant assigned to the Second Police District of the City of Chicago Police Department. (*Id.* ¶2). Spradley has been employed by CPD for 19 years, and as a Tactical Lieutenant was responsible for overseeing a team of Sergeants and Patrol Officers to conduct investigations in areas where there is a history of violence. (*Id.* ¶¶3-4). As a Tactical Lieutenant, Spradley did not have a partner; he typically drove an unmarked vehicle by himself. (*Id.* ¶6). On August 29, 2017, Spradley was traveling east on 48th Street, a one-way westbound street, investigating a narcotics sale in the area. (*Id.* ¶7). Spradley was west of Vincennes Ave. when he heard shots fired near the 48th block of Forrestville. (*Id.* ¶8). Shortly after hearing shots fired, he observed a Chevy SUV speed away from the area. (*Id.* ¶¶8, 49).[3] Spradley saw the white vehicle making a left turn from northbound Forrestville to westbound 48th Street. (*Id.* ¶11).[4]

---

the rule strictly or to overlook any transgression is one left to the district court's discretion.") (cleaned up).

[3] Harris does not dispute that Spradley testified to hearing shots fired but disputes whether shots were actually fired or audible. (Dkt. 123, ¶8). The Court finds, as discussed below, that Harris is bound by the stipulated facts from his February 2019 guilty plea and sentencing hearing including that Spradley and Petraski heard shots fired. The Court notes in addition that both the arrest report (Dkt. 122-10, attached to Harris's Rule 56.1 statement) and incident report (Dkt. 112-3, p. 22) in this case confirm this as well.

[4] Harris disputes in part DSOF ¶¶7 and 11 as vague statements supported only by Spradley's "self-serving" or "party testimony." This argument is not appropriate for a Rule 56.1 responsive statement. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) (plaintiff's Rule 56.1 responsive statement containing legal argument and conjecture was not compliant with local rule); *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008) ("It is inappropriate to make legal arguments in a Rule 56.1 statement of facts."). It is also not a valid objection. *See Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) ("Deposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving. As we have repeatedly emphasized…the term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a

Sergeant Petraski was also in the area when he heard shots fired, and like Spradley, saw a Chevy SUV speed away from the area. (*Id.* ¶¶17, 49). After Lieutenant Spradley stopped the SUV, Petraski exited his vehicle to assist Spradley. (*Id.* ¶20). Spradley approached the driver's side of the white vehicle; Markese Morgan was the driver and Harris was seated in the front passenger seat. (*Id.* ¶¶15, 22). The car was a white Chevy Blazer SUV owned by Harris. (PSOF ¶53).[5] Sergeant Petraski approached the passenger side of the vehicle. (DSOF ¶21). Morgan and Harris both presented identification to Spradley. (*Id.* ¶25). Spradley went back to his car to run the names of Morgan and Harris over his computer, and in the meantime, several officers arrived on the scene to provide backup. (*Id.* ¶¶31-32). Spradley returned to the SUV and asked Morgan to exit the vehicle. When he did, Harris jumped over to the driver's seat. (*Id.* ¶¶38-39).[6]

A video of the ensuing events shows Harris place the vehicle in reverse with the driver's door open, striking Lieutenant Spradley. (*Id.* ¶41). Harris then collided with at least one police vehicle parked on 48th Street. (*Id.* ¶42; Dkt. 123, ¶42). Harris crashed his vehicle and then fled on foot; in the meantime, several officers pursued

---

party tries to present its side of the story at summary judgment.") (citations omitted). DSOF ¶¶7 and 11 are deemed admitted.

[5] There are several videos of the incident, but none show events before Spradley stopped Harris's SUV and several police cars were on the scene. (*Id.* ¶68).

[6] Harris's objections to this fact based on vagueness and relevance are improper argument. The manner in which Harris moved to the driver's seat is not material. Further, the fact that he moved over to the driver's seat is relevant to explain how Harris was able to place the vehicle in reverse with the driver's door open and try to flee, all of which Harris admits. (Dkt. 123, ¶¶41, 43).

4

him northbound through the alley. (DSOF ¶44). Other officers pursued him on foot finding him hiding in bushes next to a parking lot. (*Id*. ¶45). Harris was arrested on a number of charges including aggravated battery/ peace officer, reckless driving, and leaving the scene. (*Id*. ¶46).[7] Spradley testified at Harris's probable cause hearing on September 5, 2017. (PX 9 (Dkt. 122-9)). Harris was detained. *See* Harris Dep. (Dkt. 122-1) p. 29. On February 1, 2019, Harris pled guilty to and was sentenced for a Class 3 Felony charge of Aggravated Battery in a Public Way. (DSOF ¶48; Dkt. 123, ¶48).

Harris's second amended complaint (Dkt. 61, "SAC") contains one count for false arrest, alleging that Spradley did not have reasonable suspicion before making the stop and that he provided false testimony at Harris's probable cause hearing. Harris claims that Spradley caused him economic harm and to be separated from his family for more than a year.

## ANALYSIS

Harris brings a single claim for false arrest, however his allegations challenge the stop and his pre-trial detention. (*see* SAC ¶¶ 20-22, 26-28). The Court will discuss each in turn but first addresses the parties' dispute about whether the stipulation at Harris's guilty plea and sentencing hearing binds him in this case.

---

[7] Harris argues that facts related to his attempt to flee are "irrelevant to the basis for the stop and search at issue." (Dkt. 123, ¶¶44-46, 48). However his complaint alleges he endured a "false and baseless arrest" and Spradley knew he needed "probable cause before making an arrest." (SAC ¶¶22, 25). And as will be discussed, probable cause for Harris's arrest is relevant to his illegal detention claim.

5

I.      **Stipulation**

Spradley contends that the stipulated facts at Harris's state court guilty plea and sentencing hearing on February 1, 2019, establish those facts as undisputed here. At the hearing, the judge asked how Harris pled to the offense, aggravated battery in a public way, to which Harris responded "guilty." (Feb. 2019 Tr. ((Dkt. 112-7)) pp. 3-4). After confirming that Harris was pleading guilty of his own free will and describing the potential sentence and consequences, the judge confirmed that Harris understood his jury waiver. The judge then asked the State for the factual basis. (*Id.* at p. 7). The State's Attorney responded:

> Your honor, it would be stipulated by and between the parties that if this matter were to go to trial, the People would call Lieutenant Ernest Spradley…who would testify he is a lieutenant with the Chicago Police Department. He along with Sergeant Michael Petraski…were patrolling in the area of 48th and Forestville on August 29, 2017…[when] they heard shots fired at approximately 10:21 p.m. Investigating at the area, they observed a 1999 Chevy Trail Blazer speed away from the area. They performed a traffic stop for investigation at 513 East 48th Street at approximately 10:21pm. They would identify the driver of the vehicle as [] Morgan, and the defendant as a passenger of the vehicle…[the officers] had Morgan step out of the driver's side of the vehicle. When they did that, the defendant slid over to the driver's side of the vehicle, started it, put it in reverse, and sped backwards with the driver's door open. That door struck Lieutenant Ernest Spradley, knocking him to the ground…The defendant also side-swiped [two squad cars]…The defendant then fled on foot… (*Id.* at pp. 7-9).

Following this statement, Harris's attorney stated, "[s]o stipulated." (*Id.* at p. 9). The judge then asked Harris if he still wished to plead guilty to Count 4 "[h]aving heard the factual basis, range of sentencing, and the possible consequences of the plea." Harris responded, "yes." (*Id.*).

6

These stipulated facts are binding in this litigation. In Illinois "[i]t is generally accepted that a criminal conviction collaterally estops a defendant from contesting in a subsequent civil proceeding the facts established and the issues decided in the criminal proceeding." *Fed. Ins. Co. v. Tresch*, 2019 IL App (1st) 181719-U, ¶ 34 (quoting *Talarico v. Dunlap*, 177 Ill. 2d 185, 193 (1997)); *see also Johnson v. Reiter*, 2015 WL 6674531, at *7 (N.D. Ill. Oct. 30, 2015) (collateral estoppel can be based on a plea agreement); *Bass v. Cty. of Cook*, 2012 WL 366902, at *4 (N.D. Ill. Jan. 30, 2012) (state court guilty plea barred § 1983 claim); *cf. Wells v. Coker*, 707 F.3d 756, 761–62 (7th Cir. 2013) (collateral estoppel did not apply where two alternative factual bases could have supported guilty plea).[8]

In response, Harris argues that: (1) that "neither [he] nor his public defender ever stipulated that such testimony would be true or accurate," (2) the Court should consider why Harris pled guilty ("he would go home that day"), and (3) the video makes it "questionable" whether Harris's car touched Spradley. (Dkt. 121 at 10-11). Harris fails to cite any authority showing that the first and second arguments are pertinent to the Court's analysis. Further, Harris's attorney at the state court proceeding expressly confirmed the facts were "so stipulated." As to the third argument, Harris cannot now contradict the factual stipulation that the "door struck

---

[8] The Court previously denied a motion to dismiss the false arrest count based on *Heck v. Humphrey*, 512 U.S. 477 (1994). (*see* Dkt. 60). On summary judgment, Spradley waited until his reply brief to raise *Heck*. (Dkt. 128). *See Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 636 (7th Cir. 2018) ("arguments raised for the first time in a reply brief are waived.") (cleaned up). In any event given the Court's ruling here it need not address the *Heck* challenge.

7

Lieutenant Ernest Spradley, knocking him to the ground" (Feb. 2019 Tr. p. 8) as this issue was conclusively decided in the state court proceeding.[9]

## II. The Stop

In moving for summary judgment, Spradley argues that his stop of Harris and Morgan was lawful. As the Seventh Circuit explained in *United States v. Jackson*:

> The Fourth Amendment permits officers to conduct a traffic stop when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity. Though the defendants argue that [the] Officer lacked probable cause to stop the vehicle…a routine traffic stop is more analogous to a so-called '*Terry* stop' ... than to a formal arrest. Thus, reasonable suspicion of a traffic violation provides a sufficient basis to justify a traffic stop. Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause. Even the reasonable belief that a driver committed a minor traffic infraction will support a stop. This is an objective standard, based upon the facts available to the officers at the moment of the seizure.

962 F.3d 353, 357 (7th Cir. 2020) (cleaned up). Harris questions "the basis for probable cause to stop and detain Mr. Harris's car" (Dkt. 121 at 4), but the standard is not probable cause but reasonable suspicion: "Under *Terry*, police officers may briefly detain a person for investigatory purposes based on the less exacting standard of reasonable suspicion that criminal activity is afoot." *United States v. Eymann*, 962 F.3d 273, 282 (7th Cir. 2020).

---

[9] Harris appears to also make an equitable argument by pointing to the "numerous complaints" against Spradley (Dkt. 123 at 29). This is not persuasive. *See Johnson*, 2015 WL 6674531, at *8 ("[plaintiff] has not directed the court's attention to any precedent suggesting that other alleged bad acts constitute an extraordinary circumstance."). Other than these arguments discussed, Harris does not explain why the stipulated facts at the hearing are not binding here. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) (the court is not obliged to "research and construct legal arguments for parties.").

8

> In making reasonable-suspicion determinations, we 'look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing.'…Ultimately, the determination of reasonable suspicion 'must be based on commonsense judgments and inferences about human behavior.'

*Id.* (cleaned up). *See also Navarette v. California*, 572 U.S. 393, 396, 134 S. Ct. 1683, 1687, 188 L. Ed. 2d 680 (2014).

The Court finds that the undisputed facts show that Spradley at a minimum had a reasonable belief that Morgan committed a traffic infraction—speeding— supporting the stop. In addition there were specific facts known to the officers which, taken together with rational inferences from those facts, reasonably warranted a brief investigatory stop. *See Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *see also Eymann*, 962 F.3d at 282.

Those facts were that on the night of August 29, 2017: (1) Spradley had been employed by CPD for 19 years and at the time was Tactical Lieutenant, responsible for overseeing a team conducting investigations in areas where there is a history of violence (DSOF ¶¶3-4); (2) Spradley was investigating a narcotics sale in the area (*Id.* ¶7); (3) Spradley and Petraski heard shots fired (*Id.* ¶49); and (4) very shortly after hearing shots fired, they observed a Chevy SUV speed away from the area. (*Id.*).[10] Taking these facts together as well as Spradley's experience, an officer could reasonably suspect that criminal activity was afoot, warranting Spradley's stop of the SUV. *See D.Z. v. Buell*, 796 F.3d 749, 754 (7th Cir. 2015) ("we must look at 'the totality

---

[10] As discussed, these facts from the plea stipulation are binding. Without assessing the credibility of the witnesses or weighing the evidence, the Court notes that these facts are confirmed in both Spradley's and Petraski's depositions and the arrest and incident reports.

9

of the circumstances known to the officer at the time of the stop, including the experience of the officer and the behavior and characteristics of the suspect.'") (citation omitted). *Cf. Huff v. Reichert*, 744 F.3d 999, 1008 (7th Cir. 2014) (individual's presence in a high-crime area alone does not support reasonable articulable suspicion).

As a result, Harris's Fourth Amendment claim based on an unlawful stop fails.[11]

### III. False Arrest

Harris alleges that he was wrongfully detained because Spradley provided false testimony at the probable cause hearing. Spradley argues that the charges against Harris were supported by probable cause, based on Harris's conduct after the stop, as seen in the video footage and based on Harris's stipulation at his sentencing hearing.

"To prevail on his constitutional claim for false arrest, [plaintiff] must show there was no probable cause for his arrest." *Williams v. City of Chicago*, 733 F.3d 749, 756 (7th Cir. 2013). "[P]laintiff may proceed to trial only if []he can show that a jury could reasonably conclude, based on the facts as construed in [his] favor, that probable cause for [his] arrest was lacking. Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Allen v. City of Des Plaines*, 262 F. Supp. 3d 727, 730 (N.D. Ill.

---

[11] The Court has reviewed all the video exhibits, but the video footage did not begin until after the initial stop. Therefore its relevance is limited to the probable cause for arrest where the facts are undisputed. Therefore, Harris's complaints about Spradley's non-compliance with internal regulations regarding video footage are unpersuasive.

2017) (cleaned up). "[P]robable cause is an absolute defense to claims under section 1983 against police officers for an allegedly unreasonable seizure, whether a false arrest or a wrongful pretrial detention." *Norris v. Serrato*, 761 F. App'x 612, 615 (7th Cir. 2019), reh'g denied (Mar. 21, 2019); *see also Lindsey v. Macias*, 907 F.3d 517, 521 (7th Cir. 2018) ("Probable cause to arrest is an absolute defense to any § 1983 claim for wrongful arrest, false imprisonment, or malicious prosecution.").[12]

The undisputed facts here establish probable cause for Harris's arrest, barring his false arrest claim. *See Martin v. Marinez*, 934 F.3d 594, 598 (7th Cir. 2019), cert. denied, 140 S. Ct. 1115, 206 L. Ed. 2d 184 (2020) ("if an officer had probable cause to believe that the person he arrested was involved in criminal activity, then a Fourth Amendment claim for false arrest is foreclosed.") (cleaned up). Harris focuses on what he argues was false testimony at the probable cause hearing about the existence of a warrant and the smell of cannabis. But Harris does not address the probable cause that existed at the time he was arrested.

At the time of his arrest, it is undisputed that although Harris was initially in the passenger seat, after Morgan got out of the vehicle, Harris moved to the driver's seat and drove the car in reverse with the driver's door open. (DSOF ¶¶ 22, 39, 41). Harris then crashed the car and fled on foot, with several officers pursuing him. (*Id.* ¶44). Harris disputes that he struck Spradley with the car, but he cannot challenge that fact now for the reasons already explained. Thus, the officers had probable cause to

---

[12] Although not explicit in the pleadings, to the extent Harris brings a malicious prosecution claim, it fails as "there is no malicious-prosecution claim under § 1983." *Norris*, 761 F. App'x at 616. Further, the parties previously agreed to dismiss count II (malicious prosecution). *See* Dkt. 60.

11

arrest Harris for at least reckless driving (625 ILCS 5/11-503(a)) and aggravated battery in public way. (720 ILCS 5/12-3.05(c)).

Further, although the reason for the initial stop was different from the reason for Harris's arrest, that does not undermine probable cause. *See Norris,* 761 F. App'x at 615 ("[B]ecause probable cause is an objective standard, [plaintiff's] arrest was lawful if [the] [o]fficer had probable cause to arrest him for *any offense*, regardless of the reason the police were called or the reason given for the arrest." (emphasis in original); *see also Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007) ("[P]robable cause to believe that a person has committed *any* crime will preclude a false arrest claim…") (emphasis in original).

Therefore Harris's false arrest claim cannot survive summary judgment.

## CONCLUSION

For the stated reasons, Defendant's motion for summary judgment [111] is granted. The Clerk is directed to enter judgment in favor of Defendant and against Plaintiff. Civil case terminated.

E N T E R:

Dated: January 24, 2022

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge